## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

BRANDEN STARLING,
a/k/a/ BRANDON STARLING,

      Petitioner,

v.                              Case No.: 4:18-cv-175-MW-MJF

SECRETARY, DEPARTMENT OF
CORRECTIONS STATE OF FLORIDA,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Branden Starling has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 6; Doc. 22). Starling did not reply. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter and that Starling is not entitled to habeas relief.[1]

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background and Procedural History[2]

The morning of April 9, 2012, Kevionta Hinson (Starling's victim) and Hinson's girlfriend, Kimberly Joseph, observed a brown station wagon with dark tinted windows parked on the street outside Hinson's duplex. The couple did not recognize the car and assumed that a neighbor had a visitor. At approximately 11:00 a.m., Hinson and Joseph walked outside. As Hinson stepped off his porch, Starling jumped out of the front passenger door of the station wagon, charged toward Hinson and ordered him to the ground. As Hinson lay on the ground, Starling rifled through his back pockets. Starling stole Hinson's wallet from his right pocket and Hinson's cell phone from his left pocket. When Starling did not find cash in the wallet, he demanded that Hinson tell him "Where it at." Hinson informed Starling he had cash in his front pants pocket. Starling ordered Hinson to roll onto his back and stole $500-$600 from Hinson's left pocket and Hinson's keys from the right pocket. Starling had a black t-shirt wrapped around the lower part of his face from his mouth down.

After robbing Hinson, Starling got back inside the station wagon, and the car took off. The station wagon had a Georgia license plate with the first three letters

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 6, Exs. B-C (trial transcript), Ex. D (trial exhibits)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

"BXR." Hinson called 911 and described the robbery, the robber, the station wagon, and the phone number of his stolen cell phone. Hinson walked over to the roadway where the station wagon had been parked, and found two cigar tips—one in the lawn near the street, and one in the street.

During the robbery, Joseph had partially concealed herself behind a car where she observed Starling. Joseph noticed that Starling had a tattoo under his right eye. On May 16, 2012, Joseph identified Starling as the robber from a photographic line-up. Joseph made the identification instantaneously and was certain of her identification.

Caroline Wilder, a forensic specialist with the Tallahassee Police Department, responded to the scene of the robbery. Wilder collected swabs from Hinson's pants pockets and also collected the cigar tips. Kerri Rosana, a DNA expert with the Florida Department of Law Enforcement, analyzed the swabs and cigar tips for the presence of Starling's DNA. Starling's DNA was on the swab from Hinson's left front pants pocket and on the cigar tip found in the street where the getaway car was parked.[3]

---

[3] Rosana obtained a mixed DNA profile of at least four people from the swab of Hinson's front left pocket. Starling was included as a possible contributor. The frequency of occurrence was approximately one in 5 individuals, meaning that one of every 5 random people would be included in the mixture (which is not rare). The DNA profile generated from the cigar tip matched Starling's DNA profile at thirteen

Starling was charged in Leon County Circuit Court Case No. 2012-CF-1581, with robbery with a firearm. (Doc. 6, Ex. A at 7).[4] A jury found Starling guilty as charged, but made a separate finding that Starling did not "actually possess a firearm" during the commission of the offense. (*Id*. at 42). Recognizing the inconsistency, the trial court reduced Starling's conviction to the lesser included offense of robbery with a weapon, and sentenced Starling as a Prison Releasee Reoffender ("PRR") to 30 years of imprisonment. (*Id*. at 49-57 (judgment and sentence), 70-88 (sentencing transcript)). The Florida First District Court of Appeal ("First DCA") held that a conviction for robbery with a weapon was inconsistent with the jury's verdict, because the only weapon referenced in the record was a firearm, and the jury determined that Starling did not possess a firearm. *Starling v. State*, 152 So. 3d 868 (Fla. 1st DCA 2014) (copy at Ex. G). The First DCA remanded the case to the trial court to reduce Starling's conviction to simple robbery and to resentence him accordingly. *Id*. On April 7, 2015, the trial court reduced Starling's

---

markers. Rosana testified that only one out of 15 quadrillion people would match the DNA profile from the cigar tip to the same extent as Starling.

[4] Unless otherwise noted, citations to the state court record are to the electronically-filed exhibits attached to the State's answer. (Doc. 6). If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

conviction to simple robbery and sentenced him as a PRR to 15 years of imprisonment. (Ex. H).

Starling filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, in which he raised three grounds of ineffective assistance of trial counsel. (Ex. I at 3-24). The state circuit court summarily denied Ground One but held an evidentiary hearing on Grounds Two and Three. (*Id*. at 38-54). After the hearing, the court entered a final order denying postconviction relief. (*Id*. at 65-68 (order), 94-150 (evidentiary hearing transcript). The First DCA affirmed *per curiam* and without written opinion. *Starling v. State*, 228 So. 3d 559 (Fla. 1st DCA 2017) (Table) (copy at Ex. L).

Starling later filed a *pro se* second/successive motion for postconviction relief under Rule 3.850. (Ex. M). The state circuit court summarily denied the motion. (Ex. N). Starling did not appeal.

Starling filed his *pro se* federal habeas petition on March 29, 2018, raising six claims (Doc. 1). The State asserts that each claim fails for one or more of the following reasons: (1) the claim is not cognizable on federal habeas review, (2) the claim is procedurally defaulted, and (3) the claim is without merit. (Doc. 6).

## II.   Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v.*

*Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that reached
> by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts. Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the

"clearly established Federal law," namely, "the governing legal principle or

principles set forth by the Supreme Court at the time the state court render[ed] its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the

governing legal principle, the federal court determines whether the state court's

adjudication is contrary to the clearly established Supreme Court case law. The

---

[5] Unless otherwise noted, references to *Williams* are to the majority holding, written
by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter,
Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-
99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy,
Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13).
The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg,
and Breyer.

adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application"

clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560

(1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## III.    Discussion

**Ground One**          **"Trial Counsel Failed To Move To Dismiss The Information, Or Petition For A Writ Of Habeas Corpus, Challenging The Prosecution And/Or Jurisdiction." (Doc. 1 at 5).**

Starling claims that trial counsel was ineffective for failing to move to dismiss the robbery charge for lack of jurisdiction because the Information was based on "fraudulent, misrepresented facts," "perjured statements," and facts "not received from a material witness." (Doc. 1 at 5). Starling asserts that he raised this claim in his first Rule 3.850 proceeding and postconviction appeal. (*Id*. at 6).

The State recognizes that Starling's claim is one of ineffective assistance of counsel. (Doc. 6 at 21). The State asserts three defenses: (1) the claim fails to present

a federal question because it "in essence, merely asserts violations of state procedural rules concerning the form of charging documents;" (2) the claim is procedurally defaulted because Starling abandoned it in his postconviction appeal; and (3) the claim is meritless. (*Id*. at 22-26).

### A.    Starling's Claim Is Cognizable On Federal Habeas Review

Starling's present claim, and the claim he presented in his first Rule 3.850 proceeding, is an ineffective assistance of trial counsel claim involving counsel's failure to challenge the charging document. (Doc. 1 at 5; Doc. 6, Ex. I at 8-14). An ineffective assistance claim is one of constitutional dimension even when it is based on counsel's failure to raise a state law issue. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) ("[T]he issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension."), *superseded by statute on other grounds*, Insanity Defense Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 2057.

### B.    Starling's Claim Is Procedurally Defaulted

The State asserts a procedural default defense based on Starling's abandonment of this claim in his postconviction appeal. (Doc. 6 at 22). Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its

prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To satisfy the exhaustion requirement, the petitioner must fairly present his federal claim to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). A claim that was not properly exhausted and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal habeas review. *Boerckel*, 526 U.S. at 839-40.

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of

the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

In Florida, when a defendant receives an evidentiary hearing on his Rule 3.850 postconviction motion, he is required to file an appellate brief. *See* Fla. R. App. P. 9.141(b)(3). Failure to address an issue in the initial brief constitutes waiver or abandonment of that issue, and renders it procedurally defaulted on federal habeas review. *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that a federal habeas petitioner, who received an evidentiary hearing on his Rule 3.850 motion, procedurally defaulted his ineffective assistance claim when he failed to argue it in his initial brief on appeal from the denial order).

Starling raised this ineffective assistance claim as Ground One of his Rule 3.850 motion. (Ex. I at 8-14). The state circuit court summarily denied the claim on the merits, conducted an evidentiary hearing on Starling's remaining claims, and entered a final order denying postconviction relief. (*Id.* at 38-39, 65-68). Starling filed an initial brief on appeal, but did not raise the issue of counsel's failure to move to dismiss (or otherwise challenge) the charging Information. (Ex. J). Starling's abandonment of the claim in his postconviction appeal renders the claim procedurally defaulted. *See Atwater*, 451 F.3d at 810; *see also, e.g., Rightmire v. Florida, Sec'y Dep't of Corr.*, No. 17-10947-D, 2017 WL 3923327, at *1 (11th Cir. May 15, 2017) (unpublished opinion) (holding that six of petitioner's federal habeas

claims were procedurally defaulted because he failed to raise them in his *pro se* brief on appeal from the denial of postconviction relief after an evidentiary hearing).

Starling makes none of the requisite showings to excuse his procedural default. Starling's procedural default bars federal habeas review of Ground One.

<u>**Ground Two**</u>          <u>**"Trial Counsel Failed To Call Prior Court Appointed Attorney As A Witness To The Alleged Victim's Identification Of Another Defendant As Perpetrator." (Doc. 1 at 7).**</u>

Starling next claims that his trial counsel, John Eagen, was ineffective for failing to call Starling's first appointed attorney, Justin Ward, to testify for the defense. Starling alleges that during a pretrial hearing, Ward witnessed the victim identify another man (also Ward's client) as the robber, resulting in Ward moving to withdraw from Starling's case based on a conflict of interest. (Doc. 1 at 7). Starling claims that had Eagen presented Ward's testimony at trial, the testimony would have supported a misidentification defense and "would have precluded [Starling's] wrongful conviction." (*Id.* at 7).

The parties agree that Starling presented this claim to the state courts in his first Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Starling briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 7-8; Doc. 6 at

27). The State asserts that Starling is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 6 at 28-35).

### A.   Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23

(2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question

is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### B.    Section 2254 Review Of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Starling's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id.* at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's rationale and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, ___ U.S. ___, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

Starling presented this claim as Ground Two of his Rule 3.850 motion. There, he provided the following additional facts. Starling alleged that it was Joseph who identified another man as the robber; that Starling was not present when this identification occurred; and that he learned of the identification from Ward. (Ex. I at 15-18). Starling alleged that after Eagen was appointed to represent him, he informed Eagen of the identification Ward witnessed, and instructed Eagen to call Ward as a defense witness. (*Id*.).

The state circuit court held an evidentiary hearing in which Starling and Eagen testified. (Ex. I at 94-150). Starling did not call Justin Ward or Joseph to testify; instead, he relied on the court file to prove his claim. Specifically, Starling asked the court to review Ward's October 17, 2012, motion for appointment of conflict counsel, and the record of the October 18, 2012, case management conference where Ward's conflict was discussed. (*Id*. at 97-103).

Eagen testified at the postconviction evidentiary hearing that when he was appointed conflict counsel, he did not review the file to determine the nature of prior counsel's conflict. Neither Starling nor anyone else informed him that Ward had witnessed Joseph identify another man as the perpetrator. (Ex. I at 105, 109-10, 113-15). Eagen testified that had he known Joseph identified another man, he would have asked Joseph about that prior identification during his cross-examination of her at trial. (*Id*. at 111-14). Eagen testified that he knew nothing about the circumstances

of Joseph's identification of another person. (*Id*. at 114). Eagen testified,

unequivocally, that he would not have called Ward to testify. Eagen explained:

> I just wouldn't put your other attorney on the stand to testify.
> And besides, if he's going to tell me what someone else says in open
> court that's hearsay. The only person—if in fact, what you're saying is
> that the victim made another identification—
>
> . . . .
>
> —in open court, Mr. Ward can't get up there and say that the
> victim told him of something else that he heard in court. That's hearsay,
> okay?

(*Id*. at 110).

The state circuit court denied relief on Starling's claim for these reasons:

> I have considered the motion, the response thereto, the court file, the
> audio recording of this case on October 18, 2012, the evidence
> presented at the hearing and the arguments of counsel and the
> defendant. For the reasons set forth below, I deny the motion.
>
> Defendant contends that his counsel was ineffective for failing to
> call Justin Ward, his prior trial counsel, as a witness for the purpose of
> establishing the fact that Ms. Joseph had identified someone else as the
> perpetrator when she was in court at a case management. The recording
> of the proceedings on October 18, 2012 do in fact demonstrate that Mr.
> Ward moved to withdraw from the case because of a perceived conflict,
> specifically, that the victim had identified someone else, another client
> of the public defender's office, as the perpetrator when in court for the
> defendant's case management.
>
> Mr. Ward was not called as a witness to the [postconviction
> evidentiary] hearing and there is nothing in the record to establish the
> circumstances of this purported misidentification. It is thus impossible
> to evaluate whether his testimony would have been helpful, or whether
> the procedure was so suggestive as to lack probative value. I conclude

that the defendant has not shown either ineffectiveness or prejudice in this regard.

(Ex. I at 65-66). The circuit court also addressed whether Eagen was ineffective for failing to investigate the basis of Ward's conflict. The court concluded that Starling's claim failed even under a failure-to-investigate theory:

> If I were to expand the defendant's assertion regarding this issue and include a claim that his counsel was ineffective for failing to research it and investigate the issue to determine the probative value of such testimony, his claim would still fail. Although the successor attorney, Mr. Olmstead, was present on the date the public defender announced a conflict, it appears from the recording that Mr. Olmstead was not close by or listening when the assistant public defender and the court discussed the issue. He had to be called over for the court to inform he [sic] that he was being appointed to the case.

> The court indicated to Mr. Olmstead that there was a conflict and that there was a disagreement about the nature of the conflict, but did not tell Mr. Olmstead specifically that the victim had supposedly identified someone else as the perpetrator. The written motion for appointment of conflict free counsel indicates that "another i.d. client has been implicated in this case." There is no indication that Mr. Ward communicated to Mr. Olmstead this information. There is also no evidence that the defendant, who was present when Mr. Ward announced the reason for the conflict, and who testified at the [postconviction] hearing that Mr. Ward told him about it, ever mentioned it to his new attorney, Mr. Olmstead. Perhaps, based on the wording of the motion, Mr. Olmstead should have inquired further, but under the circumstances it is not the sort of oversight that would constitute sufficient grounds to support the claim of ineffective assistance of counsel.

(*Id*. at 66-67). The court concluded:

> For the foregoing reasons I cannot find from the evidence presented or from the record in this case that trial counsel was

ineffective or that, even if he was ineffective, that the defendant was prejudiced thereby so as to create a reasonable probability that the result would have been different.

(Ex. I at 68). The State has provided this court with a transcript of the October 18, 2012, hearing. (Doc. 21 (order requiring transcript); Doc. 22, Ex. W (transcript)).

This court defers to the state court's factual findings because they are amply supported by the record and because Starling has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." (citing 28 U.S.C. § 2254(e)).

The record confirms that on August 6, 2012, the state trial court scheduled a pretrial hearing in Starling's case for 1:30 p.m. on October 18, 2012. (Ex. A at 2). On October 16, 2012, the Public Defender's office filed a motion for appointment of conflict counsel. (*Id*. at 2, 19). The motion described the nature of the conflict as two-fold: (1) "The Public Defender certifies that there is an irreconcilable conflict of interest in this case, but the circumstances cannot be disclosed without revealing a client confidence;" and (2) "Another ID client has been implicated in this case." (*Id*. at 19).

The morning of October 18, 2012, the trial court appointed the Regional Conflict Counsel's office to represent Starling. (Ex. A at 20). At Starling's pretrial that afternoon, Justin Ward appeared with Starling. (Doc. 22, Ex. W). These facts were revealed about Ward's motion to withdraw:

THE COURT: . . . I know that the Public Defender's Office has just filed a motion asserting a conflict with Mr. Starling. Why was it so late getting done, Mr. Ward?

MR. WARD: Because it was just this week that the victim in the case identified another one of our clients as the perpetrator.

MR. BAUER [Prosecutor]: We don't agree with that, Judge, but that's fine.

THE COURT: What's that?

MR. BAUER: I don't agree with the statement, but that's fine.

THE COURT: What is the basis of—you say the victim has indicated it's somebody else other than Mr. Starling?

MR. WARD: She picked out somebody else and said that was the person, and the person she picked was another one of our clients.

THE COURT: You mean out of a lineup?

MR. WARD: Here in court.

THE COURT: What's your understanding, Mr. Bauer?

MR. BAUER: My understanding is, the victim was asked to come to case management. I told her I couldn't tell her not to talk to defense counsel. And she was asked if the person—if she could identify the person in court, assuming the person was in court. That person wasn't brought to court. So, we object to the whole process. It's

Page 21 of 39

impermissibly subjective [sic]. And counsel has made himself a witness to it.

THE COURT:  Well, if he's a witness, then that's going to cause another conflict because he can't represent him and—

MR. BAUER:  That's the basis for his conflict now, Your Honor.

THE COURT:  Well. I guess I'm going to have to allow them out of the case then. All right. I believe I signed an order appointing Regional Counsel. I was considering rescinding it, but based upon whichever version you accept, there's a conflict and the Public Defender's Office cannot continue to represent Mr. Starling.

It's a little frustrating it's this late in the game, but anyway. So, Mr. Olmstead, you've been appointed in this case. Where did Mr. Olmstead go? All right. Would you get him, please?

(Brief pause)

MR. OLMSTEAD:  Yes, sir, Your Honor.

THE COURT:  Well, Mr. Olmstead, you've just been presented with Mr. Starling's case. This is Mr. Starling. The Public Defender has declared a conflict. It's a little bit in dispute as to exactly what the nature of the conflict would be, but there is a conflict, so I've appointed your office. It's set for trial October 22nd.

(Doc. 22, Ex. W at 1-4). Starling asked the trial judge if Ward could testify at trial concerning Joseph's identification of another man as the robber. (*Id*. at 4-5).The trial court told Starling to discuss that issue with his new attorney. (*Id*.). Later that day, Assistant Regional Counsel James Worsnopp filed a notice of appearance on Starling's behalf. (Doc. 6, Ex. A at 2, 21).

On October 30, 2012, Worsnopp filed a motion to withdraw and to appoint conflict-free counsel. (Ex. A at 23). The basis for the Worsnopp's motion was that he represented Sharrell Strain, and Starling was an adverse material witness in Strains's criminal case. (*Id.*). On November 1, 2012, the trial court appointed Eagen to represent Starling. (*Id.* at 3, 24). Starling went to trial on June 26, 2013. (Ex. B).

On this record, fairminded jurists can concur in the state court's conclusion that Starling failed to establish he was prejudiced by Eagen's failure to call Ward as a defense witness. Starling assumed, but failed to show, that Ward's testimony would have been admissible. Starling relied solely on information in the court file, but that evidence was scant and at best leads one to speculate about what Ward's testimony would have entailed and whether it would have been admissible anyway. Speculation does not satisfy *Strickland*'s prejudice standard. *See Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("Th[e] prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative."); *Grayson v. Thompson*, 257 F.3d 1194, 1225 (11th Cir. 2001) ("Under the prejudice prong of *Strickland*, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."); *see also, e.g., Fuqua v. Sec'y, Dep't of Corr.*, 409 F. App'x 243, 246 (11th Cir. 2010) (holding that petitioner's failure to adduce the proposed witnesses' testimony at the state

evidentiary hearing "has reduced the claim of prejudice to mere speculation. . . . Federal habeas relief cannot follow such speculation. Proof is required.").

The state court's rejection of Starling's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Starling is not entitled to habeas relief on Ground Two.

**Ground Three**       **"Trial Counsel Failed To Adequately Impeach The State's Only Witness (Alleged Victim's Girlfriend) With Contradictory/Inconsistent Testimony." (Doc. 1 at 8)**

Starling next claims that Eagen was ineffective for failing to impeach Ms. Joseph's trial testimony "with inconsistent and contradictory testimony." (Doc. 1 at 8). Starling asserts that because Joseph "testified to a lack of memory" at trial, defense counsel should have "required Ms. Joseph to do an in-court identification." (*Id.*). Starling argues that had counsel asked Joseph, directly, if Starling was the man who robbed Hinson, her answer "would have resulted in contradiction to her initial identification; and, Petitioner Starling would not have been wrongfully convicted." (*Id.*).

The parties agree that Starling presented this claim to the state courts in his first Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Starling briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 9; Doc. 6 at 36).

The State asserts that Starling is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 6 at 37-41).

## A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard described above.

## B.    Section 2254 Review Of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Starling's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state circuit court held an evidentiary hearing on this claim and denied relief for these reasons:

> The defendant also argues that his counsel was ineffective for failing to properly impeach the eye witness, Kimberly Joseph. Specifically, he suggests that she should have been asked whether she could identify the perpetrator in court. He assumes that she would not have been able to identify him. This may be a valid assumption given that the State apparently did not ask her to identify him in court. But, that is an assumption, not proof.
>
> Moreover, defendant's attorney testified at the hearing that that was a tactical decision, observing that it is never a good idea to ask a witness a question that you don't know the answer to. At trial, where

the only one sitting at the defense table other than the attorneys is the defendant, the odds of an in-court identification are increased substantially by the circumstances. Indeed, this is a common argument of defense attorneys to cast doubt on such in-court identifications when they are elicited by the State. And, here, we have no evidence to demonstrate whether the defendant's appearance was the same or altered significantly at the time of trial compared to the date of the incident. There is some suggestion, brought out by the proceedings, that Ms. Joseph had become a rather reluctant witness.

One of the reasons that [an out-of-court] statement of identification is specifically excluded from the definition of hearsay and is thus admissible, is because such statements are generally deemed to be reliable, even more reliable than in-court identification. That is because the out-of-court identification is generally made when memory is fresher and before a person's appearance may change. Thus, such statements are admissible even if the witness cannot make an in-court identification. The defendant's trial attorney did a good job of cross examining this eye witness and did his best to cast doubt on the accuracy of the identification, but the State also had corroborating evidence that suggested the identification by Ms. Joseph was reliable, including DNA evidence that put the defendant at the scene and an unusual tattoo Ms. Joseph described the robber as having, which, coincidentally, was present on the defendant.

For the foregoing reasons I cannot find from the evidence presented or from the record in this case that trial counsel was ineffective or that, even if he was ineffective, that the defendant was prejudiced thereby so as to create a reasonable probability that the result would have been different.

(Ex. I at 67-68).

This court defers to the state court's factual findings, because they are amply supported by the record and because Starling has not rebutted them with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845. Based on the state

court's findings, its conclusion that Starling failed to satisfy *Strickland*'s two-prong standard was reasonable.

At trial, the State did not attempt to elicit an in-court identification from Hinson or Joseph. (Ex. B). Joseph's most frequent response to questions by the prosecutor and defense counsel was "I don't know," and "I don't really remember." (*Id*. at 90-106). To establish identification, the State relied on DNA evidence and Joseph's May 2012, out-of-court identification of Starling that both she and the investigating officer confirmed at trial. Eagen attempted to impeach Joseph's May 2012, out-of-court identification by questioning her ability to observe the robber and by suggesting she may have been influenced by someone prior to the identification. (Ex. B at 101-06).

At the postconviction evidentiary hearing, Eagen explained that he made a tactical decision at trial not to ask Joseph if Starling was the robber:

A [Mr. Eagen]:  Well, I would never do that.

Q [Mr. Evans, for the State]:  Why not?

A  . . . [Y]ou never ask a question you don't know the answer to. And it's not my burden to prove anything in a criminal case, okay? And I'm not going to sit there and ask a witness on the stand if they can identify my client as the person that robbed them. If she hasn't done that in the State's case, I'm not going to open that door and you know, for her to —you know the opportunity.

And you don't know what a witness is going to do on the stand. And she was a reluctant witness and she was back and forth in this case.

Page 27 of 39

And that's all I need to do is ask the question well, you know, can you identify the person that robbed you? And he's the only person sitting at the defendant's table and I'm going to open him up to that, for her to look over there and go yeah, that's the guy? I'm not going to do that.

If the Sate didn't get her to do it, then there's a question for the jury. And I'm not going to close the door on that question by asking the question and removing any doubt in the juries mind if she answers the wrong way. And Mr. Starling doesn't know how she's going to answer that question on that stand, either.

(Ex. I at 106-07).

The state court reasonably concluded that Eagen's failure to ask Joseph whether Starling was the robber was a reasonable tactical decision, and that Starling failed to show he was prejudiced by that decision. The state court's rejection of Starling's claim was not contrary to, and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Starling is not entitled to habeas relief on Ground Three.

**Ground Four**    **"The Trial Court Erred In Denying The Petitioner's Motion For Appointment Of Postconviction Counsel For Evidentiary Hearing Or Otherwise." (Doc. 1 at 10)**

Starling claims that because his first Rule 3.850 motion raised facially sufficient claims under *Strickland*, and because he had no legal training, the state postconviction court was required to appoint counsel to assist him at the evidentiary hearing. (Doc. 1 at 10). The State asserts that Starling's claim fails, because he had

no constitutional right to counsel during his state postconviction proceeding. (Doc. 6 at 42-44).

Starling's allegations fail to state a plausible basis for federal habeas relief, because there is no federal constitutional right to postconviction counsel. *See Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings."); *id*. at 756-57 (discussing precedent on the issue); *see also Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (reaffirming that prisoners have no independent constitutional right to postconviction counsel); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Because meaningful and equal access to the state court system is adequately provided through the direct appeal process, there is generally no constitutional right to effective assistance of counsel in state collateral proceedings."); *Murray v. Giarratano*, 492 U.S. 1, 10 (1989) (extending the rule of *Finley* to death-sentenced inmates and holding that death-sentenced inmates have no federal constitutional right to counsel for purposes of seeking state postconviction relief); *Barbour v. Haley*, 471 F.3d 1222 (11th Cir. 2006) (same). Starling's allegations in Ground Four provide no basis for federal habeas relief.

**Ground Five**  **"Trial Counsel Failed To Discover That A Witness (Alleged Victim) Had Identified Another Defendant, In Open Court, As The Actual Perpetrator Of The Crime Charged." (Doc. 1 at 12)**

Starling claims that Eagen was ineffective for failing to review Ward's motion for appointment of conflict counsel. Starling asserts that had Eagen reviewed the motion, he would have discovered Joseph's October 2012, identification of another man as the robber. (Doc. 12). Starling asserts that he exhausted this claim by raising it in his second/successive Rule 3.850 motion, and that he did not raise it in his first Rule 3.850 proceeding because he did not learn of Eagen's failure to thoroughly review the case file until the evidentiary hearing. (*Id.* at 12-14). The State asserts that this claim is procedurally defaulted because: (1) the state court denied Starling's second/successive Rule 3.850 motion on the independent and adequate state procedural grounds that the claim was successive and untimely, and (2) Starling failed to appeal the order denying his second/successive Rule 3.850 motion. (Doc. 6 at 45-48).

## A.    Starling's Claim Is Not Procedurally Defaulted

The state court in Starling's first Rule 3.850 proceeding construed Starling's Ground Two as faulting Eagen not only for failing to call Justin Ward as a witness, but also for failing to investigate the basis of Ward's conflict, namely, Ms. Joseph's alleged October 2012, identification of another man as the perpetrator. *See*

discussion Ground Two, *supra*. The state court's merits ruling was the reason that the court in Starling's second Rule 3.850 proceeding imposed a procedural bar for Starling's attempt to re-litigate the issue. (Ex. N at 1-2; *see also* Fla. R. Crim. P. 3.850(h)(2) ("[A] court may dismiss a second or successive motion if the court finds that it fails to allege new or different grounds for relief and the prior determination was on the merits.")). Because Starling exhausted his failure-to-investigate (*i.e.*, "failure-to-discover") claim in his first Rule 3.850 proceeding, his attempt to re-litigate the claim in a subsequent proceeding does not render the claim procedurally defaulted on habeas review. *See Cone v. Bell*, 556 U.S. 449, 467 (2009) ("A claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration—not when the claim has been presented more than once.").

## B.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard described above.

## C.    Section 2254 Review of State Court's Decision

As discussed in Ground Two, the state circuit court rejected Starling's claim for these reasons:

> If I were to expand the defendant's assertion regarding this issue and include a claim that his counsel was ineffective for failing to research it and investigate the issue to determine the probative value of

such testimony, his claim would still fail. Although the successor attorney, Mr. Olmstead, was present on the date the public defender announced a conflict, it appears from the recording that Mr. Olmstead was not close by or listening when the assistant public defender and the court discussed the issue. He had to be called over for the court to inform he [sic] that he was being appointed to the case.

The court indicated to Mr. Olmstead that there was a conflict and that there was a disagreement about the nature of the conflict, but did not tell Mr. Olmstead specifically that the victim had supposedly identified someone else as the perpetrator. The written motion for appointment of conflict free counsel indicates that "another i.d. client has been implicated in this case." There is no indication that Mr. Ward communicated to Mr. Olmstead this information. There is also no evidence that the defendant, who was present when Mr. Ward announced the reason for the conflict, and who testified at the [postconviction] hearing that Mr. Ward told him about it, ever mentioned it to his new attorney, Mr. Olmstead. Perhaps, based on the wording of the motion, Mr. Olmstead should have inquired further, but under the circumstances it is not the sort of oversight that would constitute sufficient grounds to support the claim of ineffective assistance of counsel.

(*Id*. at 66-67). The court concluded:

For the foregoing reasons I cannot find from the evidence presented or from the record in this case that trial counsel was ineffective or that, even if he was ineffective, that the defendant was prejudiced thereby so as to create a reasonable probability that the result would have been different.

(Ex. I at 68). The First DCA summarily affirmed. (Ex. L).

The First DCA's summary affirmance is an "adjudication on the merits" of

Starling's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*,

562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court presumes that the First

DCA denied relief for the reasons outlined by the state circuit court. *Wilson*, 138 S. Ct. at 1192.

Fairminded jurists can concur in the state court's conclusion that Starling failed to satisfy *Strickland*'s deferential standard for measuring Eagen's performance. Eagen testified at the postconviction evidentiary hearing that neither Ward, Starling, nor anyone else informed him that Joseph identified another man. (Ex. I at 105-06, 110-12, 114-15). Although Starling testified at the postconviction evidentiary hearing that he told Eagen of that information, the state court rejected Starling's testimony as lacking credibility. (*Id*. at 66). Starling cannot fault counsel for failing to discover information that Starling himself knew but declined to communicate. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."); *Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) ("The reasonableness of a trial counsel's acts, including lack of investigation . . ., depends critically upon what information the client communicated to counsel."); *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1325 (11th Cir. 2002) ("Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate.").

The reasonableness of the state court's conclusion on *Strickland*'s performance prong is not undermined by the fact that Eagen admitted he did not

review the court file to determine the basis for Ward's conflict. "The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995). The test is "whether some reasonable attorney would have acted, in the circumstances, as [defense counsel] did." *Id*.; *see also Holladay v. Haley*, 209 F.3d 1243, 1251-52 (11th Cir. 2000) ("Counsel have a duty to investigate but this duty is confined to reasonable investigation.").

Eagen had no reasonable basis to investigate the basis of Ward's conflict. As Eagen explained at the postconviction evidentiary hearing, his practice was to review the order of appointment, but not necessarily the underlying motion, unless something "jump[ed] out at [him]." (Ex. I at 115). Eagen reasoned that an attorney's withdrawal based on a conflict of interest ordinarily does not reveal a defense strategy. (*Id.* at 114-15). In Starling's case, Eagen had even less reason to review Ward's motion to withdraw, because Eagen was not Ward's immediate successor. Eagen was appointed due to Regional Conflict Counsel Worsnopp's conflict. Worsnopp's conflict was based on Starling's status as an adverse witness to Worsnopp's client Sharrell Strain. Worsnopp's motion to withdraw gave no insight into Ward's conflict. For all of the foregoing reasons, the state court reasonably determined that Eagen's failure to discover Joseph's October 2012, identification was not the product of constitutionally deficient performance.

Concerning prejudice, the state court reasonably determined that Starling failed to show there was a reasonable probability the result of his trial would have been different had Eagen discovered Joseph's October 2012, identification. As with Ground Two, Starling's claim is based purely on speculation that Eagen's discovery of the identification would have affected the outcome of the trial. Starling failed to establish sufficient details of Joseph's October 2012, identification to evaluate what effect, if any, Eagen's attempt to use it during cross-examination would have had on Starling's trial. (Ex. I at 111-15). Starling's claim is even more speculative given that Joseph was a reluctant witness who remembered very little,[6] and largely ignores the fact that DNA evidence placed Starling at the crime scene.

The state court's rejection of Starling's claim was not contrary to, and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Starling is not entitled to habeas relief on Ground Five.

**<u>Ground Six</u>**          **<u>"Newly Discovered Evidence From Bre'Shawn Malone That Provides The Petitioner With An Alibi In This Present Case." (Doc. 1 at 15)</u>**

Starling claims that he has newly discovered evidence of his innocence. Specifically, Starling alleges that Bre'Shawn Malone, an "acquaintance" from

---

[6] Starling's was tried on June 26, 2013, which was eight months after the October 2012, identification.

Starling's "surrounding neighborhood," executed an affidavit "clearly indicat[ing] an alibi defense, sufficiently describing the Petitioner's whereabouts at the time of the alleged offense." (Doc. 1 at 15). Starling claims that neither he nor defense counsel could have discovered Malone's proposed alibi testimony earlier, because Starling "was unable to specifically remember where he was at the time of the alleged offense" due to being "caught up in a life of drugs and alcohol abuse." (*Id*.). Starling asserts that he raised this claim in his second/successive Rule 3.850 motion, and that he was unable to raise it in his first Rule 3.850 proceeding because he did not have the assistance of counsel. (*Id*. at 16). Malone's affidavit is attached to Starling's second/successive Rule 3.850 motion. (Ex. M at 19). Malone's affidavit, executed on October 25, 2017, states essentially that he saw Starling "throwing up and passing back out to sleep" on the morning of April 9, 2012. (*Id*.).

The State asserts three defenses: (1) the claim is procedurally defaulted because Starling did not appeal the denial of his second Rule 3.850 motion; (2) Starling's actual innocence claim does not state a ground for federal habeas relief; and (3) the state court's rejection of Starling's claim was not contrary to or an unreasonable application of federal law. (Doc. 6 at 50-57).

### A. Starling's Allegations Fail To State A Plausible Basis For Habeas Relief

The Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*; *see also Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1272 (11th Cir. 2010) ("[T]his Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases[.]"); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) ("It is not [a habeas court's] role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial."). Starling alleges no independent constitutional violation relating to Malone's alleged alibi testimony. Accordingly, Starling's allegations of newly discovered evidence provide no basis for federal habeas relief.

## IV.   Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation

by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Branden X. Starling*, Leon County Circuit Court Case No. 2012-CF-1581, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this <u>10th</u> day of April, 2020.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**